UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M Company,<br><br>    Plaintiff,<br><br>v.<br><br>Individuals, Partnerships, and Unincorporated Associations identified in Schedule "A",<br><br>    Defendants. | Case No. 20-cv-2348 (SRN/TNL)<br><br><br>**ORDER** |

Jenny Gassman-Pines and Sybil L. Dunlop, Greene Espel PLLP, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for Plaintiff.

Christopher Weimer (*pro hac vice*), Pirkey Barber PLLC, 1801 East Sixth Street, Suite 300, Austin, TX 78702, for Plaintiff.

SUSAN RICHARD NELSON, United States District Judge

   This matter is before the Court on the Motion for a Temporary Restraining Order [Doc. No. 3], Motion for an Order Temporarily Restraining Defendants' Assets [Doc. No. 3], and Motion for Limited Expedited Discovery [Doc. No. 3] filed by Plaintiff 3M Company. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** the motions.

 **I. BACKGROUND**

   Plaintiff 3M Company ("3M") is a leading manufacturer of, among other things, personal protective equipment ("PPE") such as the 3M N95 respirator mask. (Stobbie Decl. [Doc. No. 5], ¶ 4.) In the wake of the COVID-19 pandemic, demand for PPE has

1

skyrocketed, and 3M has endeavored to increase production of its N95 respirators without raising its prices. (*Id.* ¶¶ 7-8.) However, 3M alleges that Defendants—as-yet-unknown individuals or entities that market PPE products online (*see* Compl. Schedule A [Doc. No. 2])—have opportunistically used e-commerce platforms to sell counterfeit N95 respirators at inflated prices. (Compl. [Doc. No. 1], ¶ 2.) Defendants allegedly market their products using 3M's registered trademarks, without 3M's authorization, in order to take advantage of the reputation and goodwill those marks represent. (*Id.*)

Because 3M believes that the counterfeit N95 respirators pose a danger to the public, 3M has invested significant resources into identifying the sources of the counterfeit products. Based on a "review of product photographs supplied by customers who have purchased products from Defendants, and a review of products purchased from Defendants directly by or on behalf of 3M," 3M has found that the Defendants have used the identities listed in Schedule A of the Complaint to sell counterfeit 3M-branded PPE products. (Gannon Decl. [Doc. No. 6], ¶ 20.) 3M has identified such sales to customers in the United States, including Minnesota. (*Id.* ¶ 21.)

3M contends that Defendants' conduct violates their intellectual property rights, and poses a danger to public health because the counterfeit products may lack the quality implied by 3M's marks. (*Id.* ¶¶ 28-29.) Thus, Defendants' conduct allegedly risks significant harm to the public, and irreparable harm to 3M's goodwill and reputation. (*Id.*)

Consequently, 3M brought this action, alleging trademark infringement and counterfeiting in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1117, unfair competition and false designation of origin in violation of § 1125(a), trademark dilution under

§ 1125(c), and related claims under state law. 3M filed an *ex parte* Motion for a Temporary Restraining Order, seeking to enjoin Defendants' infringing conduct and to temporarily freeze Defendants' assets. In addition, 3M seeks expedited discovery in order to determine Defendants' identities.

## II.   DISCUSSION

### A.   Motion for Temporary Restraining Order

"A TRO is an extraordinary equitable remedy, and the movant bears the burden of establishing its propriety." *Life Time Fitness, Inc. v. DeCelles*, 854 F. Supp. 2d 690, 694–95 (D. Minn. 2012) (citing *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). The standard applicable to a motion for a TRO is the same as a motion for a preliminary injunction. *See id.* Namely, the Court must consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* Here, 3M has satisfied its burden, at this stage, with respect to each factor.

#### 1.   Threat of Irreparable Harm

The first factor requires the Court to consider the threat of irreparable harm absent a temporary injunction. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of

3

damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Here, 3M argues that Defendants' use of its trademarks in selling their PPE risks irreparable harm to 3M's goodwill and reputation. (Gannon Decl. ¶¶ 28-29.) Moreover, "to the extent that Plaintiff has shown a likelihood of success on its trademark-infringement claim, the Court can presume irreparable harm." *Munster Real Estate, LLC v. Webb Bus. Promotions, Inc.*, No. CV 18-2120 (DWF/ECW), 2018 WL 5314951, at *4 (D. Minn. Oct. 26, 2018) (citing *J & B Wholesale Distrib., Inc. v. Redux Beverages, LLC*, 621 F. Supp. 2d 678, 689 (D. Minn. 2007)). The Court finds that, on the evidence before it, 3M has established that it will suffer irreparable harm to its reputation and goodwill absent a temporary restraining order enjoining Defendants' use of 3M's trademarks. Moreover, the Court may presume irreparable harm from 3M's likelihood of success on the merits of its infringement claim, as analyzed below. Accordingly, this *Dataphase* factor weighs in favor of 3M's requested TRO.

### 2. Balance of Harms

The second factor requires the Court to balance the irreparable harm to 3M with the injury a TRO would cause Defendants. Here, 3M alleges that Defendants are willfully counterfeiting 3M's products. Worse, Defendants are allegedly attempting to exploit the increased demand for PPE products due to the COVID-19 pandemic. Under these circumstances, enjoining Defendants from further exploiting Defendants' trademarks does not work a hardship. *See Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994) ("When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner."); *Burger King Corp. v.*

4

*Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ("[O]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." (internal quotations omitted)). Accordingly, the Court finds that this factor weighs in favor of 3M's requested TRO.

### 3. Likelihood of Success on the Merits

The "likelihood of success" factor requires 3M to show "'only . . . a *reasonable probability* of success, that is, a fair chance of prevailing' on the merits." *Paisley Park Enterprises, Inc. v. Boxill*, 253 F. Supp. 3d 1037, 1043 (D. Minn. 2017) (quoting *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013)). The Court finds that 3M has established a sufficient probability of success on the merits of its claims.

Under the Lanham Act, anyone who, without a trademark registrant's consent, "use[s] in commerce any . . . colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive," is liable for infringement. *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 (8th Cir. 2003) (quoting 15 U.S.C. § 1114 (2000)). The Court finds that 3M has produced sufficient evidence, at this stage, to establish a reasonable probability that Defendants "use in commerce" a "colorable imitation" of 3M's registered trademarks "in connection with the sale" of Defendants' allegedly counterfeit PPE products. (*See* Gannon Decl.)

Moreover, the Court finds a sufficient probability that Defendants' alleged use of 3M's marks is "likely to cause confusion." "When the likelihood-of-confusion issue is decided by a court, the inquiry is framed by six non-exclusive factors—'(1) the strength of

5

the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree of competition between the products; (4) the alleged infringer's intent to 'pass off' its goods as the trademark owner's; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase.'" *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 759–60 (8th Cir. 2005) (quoting *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999)). Considering these factors, the Court concludes, on the evidence before it, that 3M has a reasonable probability of establishing that Defendants' alleged use of 3M's trademarks are likely to cause confusion.

Accordingly, the Court finds that 3M has demonstrated a reasonable probability of success on the merits of its trademark infringement and counterfeiting claims. Because 3M's likelihood of success on these claims is sufficient to tilt this *Dataphase* factor in favor of 3M's requested TRO, the Court need not analyze the likelihood that 3M will succeed on its other claims.

### 4. Public Interest

Finally, the Court finds that the public interest supports 3M's requested TRO. "Where, as here, a plaintiff has shown a likelihood of success on a trademark-infringement claim, public policy weighs in favor of protecting consumers against the infringement by enjoining a defendant from distributing the infringing products." *Munster Real Estate, LLC*, 2018 WL 5314951, at *4 (citing *J&B Wholesale Distrib.*, 621 F. Supp. 2d at 689). This principle is especially true where the counterfeit product allegedly risks harm to public health. (Gannon Decl. ¶¶ 28-29.) Accordingly, the fourth *Dataphase* factor also weighs in favor of 3M's requested TRO.

In sum, the Court finds that each of the *Dataphase* factors supports granting 3M's Motion for a Temporary Restraining Order. Accordingly, the Court will grant 3M's motion, as explained below.

### B. Motion for an Order Temporarily Restraining Defendants' Assets

3M seeks a temporary restraining order freezing Defendants' assets, including any assets held by eBay, PayPal, or other payment processers connected to the sale of counterfeit PPE. This relief is necessary, 3M argues, in order to prevent Defendants from dissipating the funds they have received from the sale of allegedly counterfeit PPE.

The Court's equitable power to grant a temporary restraining order freezing an alleged trademark infringer's assets is well-established. "[A] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir.1988) (en banc)). Because the Lanham Act authorizes an accounting of profits, a form of equitable relief, a district court has "the inherent power to freeze [an infringer's] assets in order to ensure the availability of that final relief." *Id.*; *accord Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("Here, [plaintiff] seeks a permanent injunction and the equitable remedy of receiving appellants' profits from counterfeiting under 15 U.S.C. § 1117. A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief.").

Indeed, the Second Circuit has observed that "all three of our sister circuits to have considered the issue have unanimously held that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting against allegedly infringing defendants in Lanham Act cases." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132 (2d Cir. 2014) (citing cases from the Fifth, Ninth, and Eleventh Circuits).

As analyzed above, 3M has established a sufficient likelihood of success on the merits of its counterfeiting claims to warrant a temporary restraining order. Moreover, 3M has established a sufficient likelihood that Defendants will attempt to evade any judgment against them by dissipating their assets during the pendency of this litigation. Accordingly, the Court finds that an injunction temporarily restraining Defendants' assets is necessary "in order to ensure the availability of . . . final relief." *Reebok Int'l, Ltd.*, 970 F.2d at 559. Therefore, the Court will temporarily freeze Defendants' assets acquired from the sale of allegedly counterfeit PPE.

Moreover, the Court will temporarily freeze any of Defendants' funds held by the third parties Defendants use to transact their business online, including eBay, PayPal, and other payment processors. *Cf. Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992) (freezing assets held at non-party banks and other financial institutions); *Chanel, Inc. v. Sunus Online Grp.*, LLC, No. EDCV132194JGBDTBX, 2014 WL 12558780, at *4 (C.D. Cal. Jan. 15, 2014) (same). Although temporarily freezing such accounts may impose some hardship on Defendants, the Court finds that such a temporary restraint is necessary to prevent

8

Defendants from receiving the proceeds of their allegedly infringing sales, and thereafter dissipating such funds.

### C. Order Authorizing Expedited Discovery

3M seeks an order authorizing expedited discovery. According to 3M, there is good cause to authorize such discovery because the information 3M seeks is necessary to discover the identities of Defendants and such discovery would help 3M pursue a preliminary injunction.

The Federal Rules of Civil Procedure allow courts to permit expedited discovery before the Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1) (stating that "a party may not seek discovery from any source before parties have conferred as required by Rule 26(f), except . . . when authorized by . . . court order"). When considering a motion for expedited discovery, courts apply a "good cause" standard or a standard similar to that of a preliminary injunction. Courts within the Eighth Circuit generally apply the "good cause" standard, although the Eighth Circuit has not adopted either standard. *Council on Am.-Islamic Relations-Minn. v. Atlas Aegis, LLC*, No. 20-CV-2195 (NEB/BRT), 2020 U.S. Dist. LEXIS 201288, at *15 (D. Minn. Oct. 29, 2020) (citations omitted). To assess whether good cause exists, the "party requesting expedited discovery must show the need for expedited discovery, in consideration of administration of justice, outweighs prejudice to [the] responding party." *Urban Armor Gear, Ltd. Liab. Co. v. Does*, No. 8:19CV414, 2019 U.S. Dist. LEXIS 189264, at *4 (D. Neb. Oct. 30, 2019).

The Court finds that Plaintiff has shown good cause for expedited discovery. First, Plaintiffs have shown the potential for ongoing infringement through the distribution of the

9

counterfeit respirators, which supports a finding of good cause. *See Kennedy v. Itv Direct*, No. 08-6244 (ADM/JSM), 2009 U.S. Dist. LEXIS 146583, at *8 (D. Minn. Jan. 8, 2009). Moreover, the information 3M wishes to seek through expedited discovery would help their pursuit of a preliminary injunction. *See id.* (citing *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F.Supp.2d 986, 991 (S.D. Tex. 2004)).

Also, without expedited discovery, 3M likely would not be able to identify the Defendants, which would stifle this litigation. Courts in the Eighth Circuit permit expedited discovery in cases, such as this one, where the identities of the defendants are hidden due to defendants' use of technology or third parties. *See, e.g.*, *United Pet Grp., Inc. v. Does*, No. 4:13CV01053 AGF, 2013 U.S. Dist. LEXIS 117677, at *3-5 (E.D. Mo. Aug. 20, 2013) (granting plaintiff's motion for expedited discovery and authorizing plaintiff to immediately serve Rule 45 subpoenas on Amazon.com and other like entities to obtain information necessary to identify John Doe defendants); *Urban Armor Gear, Ltd. Liab. Co. v. Does*, No. 8:19CV414, 2019 U.S. Dist. LEXIS 189264, at *2-5 (D. Neb. Oct. 30, 2019) (same); *see also Express Scripts, Inc. v. Jefferson*, No. 4:15CV1410 RLW, 2016 U.S. Dist. LEXIS 18878, at *2-3 (E.D. Mo. Feb. 17, 2016) (granting plaintiff's motion for expedited discovery and authorizing plaintiff to immediately serve Rule 45 subpoenas on Microsoft Corporation to obtain identities of defendants); *Express Scripts, Inc. v. Jefferson*, No. 4:15CV1410 RLW, 2015 U.S. Dist. LEXIS 140788, at *2-4 (E.D. Mo. Oct. 16, 2015) (granting plaintiff's motion for expedited discovery and authorizing plaintiff to immediately serve Rule 45 subpoenas on GoDaddy Inc., Tucows, Inc., and VistaPrint

Technologies to obtain identities of defendants). Finally, 3M has shown, and the Court finds, that there is little if any prejudice to Defendants in permitting expedited discovery.

Accordingly, the Court finds good cause exists and permits expedited discovery as set forth below.

### D. Security Bond

The Court finds that 3M shall not be required to place a security bond with the Court. *See Benefits Admin. Comm. of Brush Aftermarket N. Am., Inc. Grp. Pension Plan v. Wencl*, No. 16-CV-2794 (WMW/BRT), 2016 WL 8809478, at *3 (D. Minn. Aug. 22, 2016) (declining to require bond where "the TRO is unlikely to cost [defendant] anything); *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Engineers*, No. CIV. 13-2262 JRT/LIB, 2015 WL 3887709, at *2 (D. Minn. June 24, 2015) ("Courts in this district have waived the bond requirement in cases . . . in which the defendant had not shown that any damages would result from the wrongful issuance of an injunction.").

## III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for a Temporary Restraining Order [Doc. No. 3] is **GRANTED**, as follows:

    a. Defendants, their agents, servants, employees, officers and all persons and entities in active concert and participation with them are enjoined from using the 3M Marks—or any reproductions, counterfeit copies or colorable imitations thereof in any manner, as well as any other

11

      mark(s) confusingly similar thereto—for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods that do not constitute genuine 3M product, or is not authorized by 3M to be sold in connection with the 3M Marks, including, without limitation, 3M-branded N95 respirators;

  b. Defendants, their agents, servants, employees, officers and all persons and entities in active concert and participation with them are further enjoined from

      i. passing off, inducing, or enabling others to sell or pass off any product as a genuine 3M product that is not produced under the authorization, control, or supervision of 3M and approved by 3M for sale under the 3M Marks;

      ii. committing any acts calculated to cause consumers to believe that Defendants' counterfeit 3M products are sold under the authorization, control or supervision of 3M, or are sponsored by, approved by, or otherwise connected with 3M;

      iii. secreting, concealing, destroying, altering, selling, transferring or otherwise disposing of any inventory of counterfeit 3M products in Defendants' possession, custody or control;

      iv. secreting, concealing, destroying, altering, selling, transferring or otherwise disposing of any computer files, data,

        business records, documents or any other records or evidence relating to Defendant's Seller Identities, user accounts, eBay accounts, or any money, securities or other property or assets of Defendants relating to the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of counterfeit 3M products, including 3M N95 respirators or other 3M PPE;

   v. effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other seller platform, account, or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of counterfeit 3M products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order;

   vi. transferring ownership of, or otherwise canceling or deleting the Seller Identities or eBay storefronts associated with the Seller Identities while this action remains pending.

  c. This Order shall remain in effect until further order of the Court.

2. Plaintiff's Motion for an Order Temporarily Restraining Defendants' Assets [Doc. No. 3] is **GRANTED**, as follows:

  a. Upon receipt of notice of this Order, Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons

in active concert or participation with any Defendant, are temporarily enjoined from transferring, disposing of, or secreting any funds obtained from the sale of products bearing 3M trademarks, until further order of the Court.

b. Further, PayPal, Inc., eBay Inc., and any other third-party payment processor used by Defendants shall, upon receipt of notice of this Order, immediately freeze all eBay, PayPal, or other payment accounts associated with the Defendants identified in Schedule A to the Complaint [Doc. No. 2]. Such entities are prohibited from transferring any funds from such accounts to the Defendants until further order of the Court.

3. Plaintiff's Motion for Limited Expedited Discovery [Doc. No. 3] is **GRANTED**, as follows:

   a. Expedited Discovery on Defendants

      i. Plaintiff may immediately serve interrogatories and requests for production of documents on Defendants sufficient to discover the following: the existence and location of any additional counterfeit 3M products offered by Defendants and the existence of any additional online seller identities operated by Defendants.

      ii. Any information disclosed to Plaintiff in response to the expedited discovery issued pursuant to this Order may be used

solely for the purpose of protecting Plaintiff's rights as set forth in the Complaint and will not be further disseminated, except in support of Plaintiff's anticipated preliminary injunction motion.

   iii. Defendants shall serve answers to interrogatories on Plaintiff and produce documents responsive to Plaintiff's document requests to Plaintiff no later than 14 days after service of such discovery on Defendants.

b. Expedited Discovery By Way of Rule 45 Subpoenas on Third Parties

   i. Plaintiff may immediately issue Rule 45 subpoenas on eBay, PayPal, or any other third-party payment processor or other relevant third parties sufficient to learn:

   1. the identities of Defendants as identified in Schedule A to the Complaint [Doc. No. 2];
   2. the name, address, email address, telephone number, PayPal account, or other payment accounts associated with such eBay accounts;
   3. any account details, including identifying information and account numbers for all accounts or storefronts the Defendants currently own or maintain or have previously owned or maintained;

    4. the Defendants' methods of payment, methods for accepting payment, and any financial information associated with Defendants' user accounts and storefronts;

    5. the amounts of any monies held in Defendants' accounts and any name, address, email address, telephone number, and bank account associated with such accounts; and

    6. a full accounting of Defendants' sales history and listing history through such accounts.

4. 3M shall not be required to place a security bond with the Court.

5. The parties shall meet and confer regarding the setting of a hearing date and a briefing schedule for a preliminary injunction motion and shall update the Court no later than 30 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: November 20, 2020                    <u>s/Susan Richard Nelson</u>
                                                               SUSAN RICHARD NELSON
                                                               United States District Judge